**Jeffrey S. RENZI, Appellee,**

v.

**COMMONWEALTH OF VIRGINIA, Appellant.**

No. 85–6484.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1985.

Decided June 25, 1986.

---

Jacqueline G. Epps, Sr. Asst. Atty. Gen. (William G. Broaddus, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellant.

Robert B. Machen, Fairfax, Va., for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In the Circuit Court of Fairfax County, Virginia, a jury found Renzi guilty of possession of phencyclidine (PCP) and specified his punishment to be twenty years imprisonment and a fine of $1,000.

After a direct appeal proved unavailing, Renzi sought a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. That court granted the writ upon a finding that Renzi's trial

had been so unfair as to amount to a deprivation of due process.

## I.

On October 7, 1982, Fletcher, a confidential informant, arranged a meeting between Kreitzer, a police official working undercover, and Renzi so that Kreitzer could buy PCP from Renzi.

According to Kreitzer, Fletcher drove into a High's parking lot with Renzi in the front passenger seat. Kreitzer got into the back, and Fletcher drove off. Renzi had a plastic bag containing a green plant-like material, and Renzi and Kreitzer negotiated for the sale of two "cans" of PCP by Renzi to Kreitzer. Renzi measured the requested amount, placed it in another plastic bag, and gave it to Kreitzer. In return, Kreitzer paid Renzi $100 as Renzi assured him that the PCP was of excellent quality.

The entire transaction took no more than two minutes, after which Kreitzer was let out at the parking lot and Fletcher and Renzi drove off.

Renzi took the stand in his own defense and told a very different story. Renzi testified that he had been called by Fletcher and offered a job as a painter. Fletcher picked him up for the purpose, Renzi thought, of taking him to the job site. Fletcher made a stop at a house that was unfamiliar to Renzi, went inside and returned with a container which he placed beneath the driver's seat. Fletcher then told Renzi that they had to pick up another painter. The third person, of course, was Kreitzer.

Renzi's testimony was in general agreement with Kreitzer's about the meeting in the parking lot and the taking of a two minute ride after which Kreitzer was returned to the parking lot. His version of what happened during that ride, however, differed markedly from Kreitzer's. He testified that the sale of the two cans of PCP was effected by Fletcher. Renzi's version was that Fletcher negotiated the sale. Fletcher then reached beneath the driver's seat and passed a plastic bag to Renzi with instructions to measure out two cans of the vegetable material for Kreitzer. Renzi did that and received $100 from Kreitzer but immediately passed the money on to Fletcher. Thus, according to Renzi, he was not the principal; he only supplied requested manual assistance to Fletcher.

Renzi testified that Fletcher never performed his promise of painting employment.

## II.

During a discovery hearing, Renzi moved to require the Commonwealth to produce the name and address of its confidential informant. The Commonwealth's Attorney responded that if any confidential informant had been present at the drug buy, he would be "put under subpoena to appear." Renzi's lawyer requested that the informant be produced before trial so that he might be interviewed before testifying. The judge responded to that, expressing confidence that the Commonwealth's Attorney "can work something out to get him here early that morning sometime so you can talk to him. You'll have plenty of time to talk to him."

The Commonwealth did not subpoena Fletcher, but, six days before trial, the Commonwealth gave Renzi's lawyer Fletcher's name and an address. Renzi promptly arranged for the issuance of a subpoena, but, on the morning that the trial was to begin, found that the subpoena had been returned marked "Not Found." Renzi elected to proceed with the trial despite Fletcher's absence. The lawyer now says that he thought the Commonwealth would still produce Fletcher for examination and cross-examination. He was not produced, and, on hearsay grounds, Renzi was not permitted to testify as to any statements made to him by Fletcher.

At a post-trial hearing upon Renzi's motion for a new trial based upon after discovered evidence, it appeared that Fletcher had been in the drug business. He had experienced a religious conversion and wished to make amends for some of his past transgressions. He became a confi-

dential informant and arranged transactions resulting in the arrest of approximately thirty drug dealers.

At the post-trial hearing, Kreitzer testified that when he gave the address to the Commonwealth's Attorney he thought Fletcher was no longer there; he thought Fletcher had left the area, which well might have been the case, but the address he supplied was the last one he had.

### III.

The Commonwealth first contends that Renzi has not adequately exhausted his state remedies, and that the petition for a federal writ of habeas corpus is premature for that reason. It points to the fact that Renzi's petition for a writ of error charged that the trial court erred in denying a motion for a new trial based upon after discovered evidence. It contends that the identical federal question sought to be presented here was not first presented to the Supreme Court of Virginia.

The contention rests too narrowly upon the caption of the argument presented to the Supreme Court of Virginia and neglects a critical part of its substance. The after discovered evidence that was the foundation of the motion was said to have been the fact that the Commonwealth failed to produce Fletcher during the trial as it had promised, and that it misled Renzi as to Fletcher's whereabouts. The brief stated all of the relevant facts upon which Renzi relies here. It specifically contended that Renzi "was denied his due process rights by his inability to get ... [Fletcher's] testimony." Finally, there was a citation to *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the Supreme Court had held that when an undercover informer was a participant in, or witness to, a crime and the testimony of the informer would be of substantial help to the defendant, the privilege to withhold disclosure of his identity must give way and a trial without this testimony was so unfair as to amount to a deprivation of due process. *Id.* at 64–65, 77 S.Ct. at 629–30. Renzi's contention was substantially the same as that made in *Roviaro*. Citation of that case to the Supreme Court of Virginia, coupled with the explicit claim of deprivation of due process, was a sufficient presentation of the federal claim to the state court.

The exhaustion requirement exists, as a matter of comity, to give the state court the first opportunity to adjudicate alleged constitutional defects in its own criminal prosecutions. *See Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), *citing Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam). State remedies are sufficiently exhausted when the state court is given a "'fair opportunity' to apply controlling legal principles to the facts bearing upon ... [a] constitutional claim" by fair presentation of the "substance" of the federal claim. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d. 3, *quoting Picard v. Connor*, 404 U.S. 270, 275–78, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971).

The Commonwealth relies upon a narrow reading of *Harless*. In *Harless*, the Supreme Court held that state remedies had not been exhausted, though all of the facts underlying the federal constitutional claim had been disclosed, because the petitioner had failed to identify any federal constitutional principle that might be implicated. This case is different, for in addition to disclosure of the facts underlying the federal claim, there was the specific claim of a deprivation of due process and a citation to *Roviaro*.

We think Renzi sufficiently disclosed his federal claim. He did substantially more than state the bare underlying facts. The claim of a deprivation of due process, coupled with a citation to *Roviaro*, in which the court held that there had been a denial of federally guaranteed due process upon strikingly similar facts, was enough to have given the state court warning that a federal constitutional claim was being presented. *See Graham v. Solem*, 728 F.2d 1533, 1535–36 (8th Cir.1984) (en banc).

## IV.

We reach the merits and affirm the district court's award of the writ, though with some modification.

■ At the outset, we may recognize that Renzi's claim of an expectation that Fletcher would support his version of the events seems incredible. Fletcher was engaged in setting up drug dealers for arrest and prosecution. For his cooperation with the authorities, he had immunity from prosecution for his own earlier violations of Virginia's drug laws, but that immunity would not protect him from a new offense. Moreover, if Renzi is to be believed, Kreitzer, the law enforcement official, was actively engaged with Fletcher in setting up innocent people for arrest and prosecution upon substantially false charges. A serious charge of that nature, though conceivable, is unlikely to be true.

We, however, are not the fact finders, and this appeal should not be resolved on the basis of our supposition that one set of facts is more probable than another.

■ The district court accepted the lawyer's representation that he confidently expected some corroboration of Renzi by Fletcher, corroboration which might be found if Fletcher declined to answer certain relevant questions on the ground of the Fifth Amendment's protection against self-incrimination. The district court also accepted the lawyer's representation that when he went to trial knowing that Fletcher was not to be found at the address he had been given, he was nevertheless relying upon the production of Fletcher that the Commonwealth's Attorney and the trial judge seemingly collectively had promised.* When the trial opened, the lawyer knew that Fletcher had not been found at the address he had been given, but he did not know that the Commonwealth did not have better information or had made no other arrangements for Fletcher's production.

■ The Commonwealth's Attorney had promised to place Fletcher under subpoena. He did not attempt to do so. The promise was ill kept by giving to defense counsel, six days before trial, Fletcher's name and an address which Kreitzer knew or thought incorrect. Had defense counsel been told that it was likely that Fletcher had left the area and that the Commonwealth had no information about his whereabouts, he could have initiated his own search for Fletcher. After having procured the arrest and prosecution of so many drug offenders, Fletcher may well have gone into hiding, but the defense was at least entitled to a reasonable opportunity to search for him. The district court reasonably concluded that the conduct of the prosecution deprived the defense of an opportunity to search for Fletcher with the possibility that he might be found and produced.

In giving defense counsel what purported to be Fletcher's address, the defense was misled, and the misleading was intentional, at least on the part of the law enforcement official. The resulting loss of an opportunity to find and produce Fletcher was such unfairness as to amount to deprivation of due process, as the Supreme Court held in *Roviaro. See United States v. Price*, 783 F.2d 1132, 1137 (4th Cir.1986); *McLawhorn v. North Carolina*, 484 F.2d 1, 6 (4th Cir.1973).

## V.

■ The district court conditioned issuance of the writ only upon a retrial of Renzi. In that we think it went too far. If Fletcher is an unavailable witness, Renzi

---

* *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir. 1980), is a similar, though distinguishable, case. There the court found no error under *Roviaro* in the Government's failure to produce a confidential informant at trial, but it was noted that the defendant never requested that the informant be produced at trial and his presence was not promised. We agree that the Government bears the obligation to exert "rea-sonable efforts" to produce an informant "only when 'his presence had been properly requested by the defendant,'" *id., quoting United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976), and that there is no general obligation to corral these government agents. In the instant case, however, reasonable efforts were not exerted and the presence of the witness at trial had been promised.

has been fairly tried once and should not be tried again. We think that issuance of the writ should be conditioned upon a retrial only if, after reasonable opportunity is afforded and cooperation by the Commonwealth provided, the defense is able to locate and produce Fletcher. The decree should be modified to that extent.

With that modification, the judgment is affirmed.

AFFIRMED.

CHAPMAN, Circuit Judge, dissenting:

I respectfully dissent. I do not believe the petitioner has exhausted his state remedies, but even if he has done so, I do not think the facts in this case show the deprivation of a right secured by the U.S. Constitution so as to justify the issuance of the Great Writ.

I

In the majority opinion Fletcher is referred to as a "confidential informant," but I think this designation is not in keeping with the facts of the case. Fletcher was an informant, and at the time of the drug sale to Officer Kreitzer, the petitioner Renzi did not know that Fletcher was an informant, nor did Renzi know that Kreitzer was a law enforcement officer, but Renzi knew Fletcher. Renzi testified that Fletcher called him on the telephone and offered him a job as a painter, and that Fletcher then picked Renzi up in Fletcher's automobile. The sale of the drugs took place after Fletcher and Renzi had been joined in the automobile by Kreitzer.

Renzi was arrested on January 10, 1983, under a warrant alleging that on or about October 7, 1982, he did knowingly and intentionally distribute PCP in violation of the laws of Virginia. A preliminary hearing was held on January 26, 1983. A motion for discovery and inspection was filed, and a hearing was held on February 15, 1983. In response to the request that the Commonwealth attorney produce the confidential informant for interview prior to trial, the record reflects:

THE COURT: Well, if he was present, do you object to giving him the name?
MR. KIDWELL [Commonwealth attorney]: If he was present I'll put him under subpoena to appear.
THE COURT: Is that fair enough?
MR. MACHEN [Renzi's attorney]: Yes, Your Honor. That's what I asked for.
THE COURT: Well, let's do this, if you would. Number one, let Mr. Kidwell find out if he was present—and he can convey that to you. If he was in fact present, I don't know how easy it will be to get in touch with whoever this individual is. But if you can't work something out beforehand, I'm sure that Mr. Kidwell can work something out to get him here early that morning sometime so you can talk to him. You'll have plenty of time to talk to him.
MR. MACHEN: All right, sir.

According to the Commonwealth, it provided the name and address of Glendis Fletcher to Renzi's attorney by telephone on February 24, 1983, and on February 28, 1983, Renzi's attorney issued a subpoena for Fletcher.

The trial began on March 7 and concluded on March 8, 1983. On the morning of the first day of trial, Renzi's attorney was aware that his subpoena for Fletcher had been returned unserved because Fletcher could not be found. The attorney made no motion for a continuance but elected to proceed to trial knowing that his subpoena had not been served.

Officer Kreitzer testified for the Commonwealth and Renzi took the stand in his own defense. While Renzi was being examined by his attorney, the following occurred:

Q. Do you know a Mr. Glen[d]is Fletcher?

A. Yes.

Q. Do you know the officer who testified earlier?

A. No; not really; from that day there at the parking lot; that's the only day that I knew him—knew of him, seen him.

Q. Have you seen him since then?

A. Yes; he came to see me in the jail.

Q. Tell the jury your involvement with Mr. Fletcher on the day in question.

A. I was staying in Falls Church, staying at a friend of mine's house and Glen[d]is Fletcher called me up and he asked me if I was ready to go to work.

MR. KIDWELL: Your Honor, I object to the hearsay unless Mr. Fletcher is here to testify for them.

THE COURT: Mr. Machen.

MR. MACHEN: I think that we should approach the Bench at this time.

BENCH CONFERENCE

MR. MACHEN: Your Honor, I don't think I have to go into what Mr. Fletcher said at that time and I won't go into it, but I would like for the record to show that based upon the information that the Commonwealth gave us with regard to Mr. Fletcher's name and location, we did subpoena him at that location.

He was not found and so he is not able to appear today.

THE COURT: Well, it's technically hearsay whether in fact he is here or not, and I would note that for the record.

Your client, of course, can discuss what he did as a result of that conversation, but it's technically hearsay and I would have to sustain the Commonwealth's objection.

MR. MACHEN: I understand that at this time, your Honor, but I would like the record to reflect that Mr. Renzi was advised that he was not going to be present today and elected to go forward when we found that Mr. Fletcher was not going to appear——even though he would not appear, so he has made an election.

THE COURT: To go forward, correct?

MR. MACHEN: Yes.

Following the jury verdict of guilty, there was a motion for a new trial based upon the claim that the Commonwealth had failed to keep its promise to produce the confidential informant. At the hearing, Officer Kreitzer was examined by Renzi's attorney:

Q. Did you provide to the Commonwealth Attorney the name and address of your confidential informant?

A. I provided the name and the last address that I had—yes, sir—to the Commonwealth Attorney.

Q. Did you state to the Commonwealth that that was—that is the address of Mr. Glendis Fletcher?

A. I gave him the last known address. I can't recall the exact conversation I had with him. That's the last place I knew he was living.

Q. Okay. At the time that you provided that information to the Commonwealth Attorney, did you in fact know that your confidential informant, Mr. Glendis Fletcher had absconded the area and the state?

A. You will—we'd have to back up. He wasn't my informant. He was—I used him that day, but he wasn't working for me per se, and as far as leaving the state, the best of my information was that he was no longer in the area. I don't know whether he was in or out of the state.

Q. When we issued the subpoena, which was immediately after you gave that— we could look at the court records to see it—did you in fact know that he had left the area?

A. I knew that he probably did not live—I had not checked that address, but I don't know whether he lived there or not. I assumed that he did not from the information I had.

Q. And have you discussed this after the trial?

A. Have I discussed it? I'm sorry— with who?

Q. Well, who is your other—is it Mr. Bowman?

A. Mr. Bowers, you mean?

Q. Bowers.

A. Have I discussed it—what do you mean? Where he lives?

Q. Where he lives.

A. No, sir. He's not my informant; he doesn't concern me, so I haven't discussed where he is at or where he lives—no, sir.

Q. Did you know that that subpoena would not reach him at that address?

A. Sir, it's like I said, I had no personal knowledge that he didn't live there. I had assumed that he did not, because the last I heard, he wasn't going to be in the area very long after that, but that is, we discussed with you that that was the last known address that I had on him.

II

Following conviction Renzi petitioned for a writ of error in the Supreme Court of Virginia and stated his question as:

Whether or not the court erred in denying the motion for a new trial based upon the after discovered evidence that the Commonwealth had failed to keep its promise to produce the confidential informant after misleading the defendant with regard to the whereabouts of the confidential informant.

In the claim for habeas corpus in the United States District Court, the question presented by Renzi was:

Petitioner was denied his right to due process and a fair trial secured by the fifth, sixth, and fourteenth amendments to the United States Constitution by the unconstitutional failure of the prosecution to disclose exculpatory evidence to the defendant, and that the Commonwealth had in its exclusive possession the name and address of the confidential informant who is integrally involved with, and had arranged, the transaction which resulted in the charges for which the petitioner was tried.

The petitioner and the majority find that the contentions before the Supreme Court of Virginia and this court are substantially the same as those made in *Roviaro* and that the citation of *Roviaro* and the claim of deprivation of due process sufficiently presented the federal claim to the state court. I question this reasoning. There is a considerable difference between the question presented to the federal courts and the question presented to the Supreme Court of Virginia, which is a claim of error in denying a new trial based on after-discovered evidence. The Virginia court could have easily decided that this was an abuse of discretion question. It could have also determined that the evidence was not after discovered because Renzi knew and was acquainted with Glendis Fletcher, his attorney knew that the subpoena for Fletcher had been returned "Not Found," and the attorney advised the trial judge that there was an election to proceed with the trial without the presence of Fletcher. The question presented to the federal courts is clearly a constitutional claim that I do not think has been adequately presented to the state courts.

In *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982), the Court stated:

In *Picard v. Connor*, 404 U.S. 270 [92 S.Ct. 509, 30 L.Ed.2d 438] (1971), we made clear that 28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. *Id.*, at 276–277 [92 S.Ct. at 512–13]. It is not enough that all the facts necessary to support the federal claim were before the state courts, *id.*, at 277 [92 S.Ct. at 513], or that a somewhat similar state-law claim was made. (Circuit Court citation omitted). In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim. *Picard, supra,* at 275, 277–78 [92 S.Ct. at 512, 513]. Cf. *Rose v. Lundy*, 455 U.S. 509, 518, [102 S.Ct. 1198, 1203, 71 L.Ed.2d 379] (1982).

I do not think that Renzi's petition to the Supreme Court of Virginia gave that court the fair opportunity required by *Anderson* to apply the controlling legal principles to the facts of his constitutional claim, and I would remand with instructions to the district court to dismiss under *Rose v. Lundy*.

## III

This case is much different from *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In that case the accused did not know the identity of the informant, the prosecution repeatedly refused to disclose the identity of the undercover informant, and the trial court denied all of the motions of the accused to have the informant identified. Renzi's trial attorney had only to ask his client for the identity of those persons in the automobile at the time of the drug sale. Renzi was acquainted with Fletcher, so this is not a case in which the prosecution is trying to hide the identity of a witness. Renzi knew that Fletcher and Officer Kreitzer were the two other people in the car at the time of the sale. I fear that under the majority opinion the government is saddled with the burden of guaranteeing the presence of a witness at trial, even a witness hostile to the defendant. The Commonwealth attorney at the motions hearing did not promise to produce the witness; he stated he would put him under subpoena if the witness were present during the transaction. The government could not subpoena Fletcher if he had left the area and his whereabouts were unknown. Is there to be pretrial detention of witnesses to guarantee their appearance?

The government did not mislead Renzi's attorney, but gave to the attorney the last known address of Fletcher. Since Fletcher had set up the sale from Renzi to Kreitzer, it would have strengthened the prosecution's case to have Fletcher present to testify. The majority opinion finds incredible Renzi's claim of an expectation that Fletcher would support his version of the sale, and I join in this finding. This claim by Renzi is just as difficult to swallow as that of his attorney that he expected some corroboration of Renzi by Fletcher, which corroboration might come if Fletcher decided to invoke the fifth amendment protection against self-incrimination. This is nothing more than speculation. A defendant may hope that a government witness will invoke the fifth amendment, and he may hope that the effectiveness of the government witness may be neutralized or destroyed by cross-examination, but this hope does not ripen into a constitutionally protected right. A party does not have a constitutional right to call a witness just so the witness can invoke the fifth amendment.

What has Renzi been denied other than the opportunity to interview a witness who was never called, who in all probability would have been hostile to Renzi's case, and whose presence would have strengthened the government's case? In the three years since trial, Renzi has made no showing that, if present, Fletcher would have aided Renzi.

## IV

It appears to me that this is an obvious case of sandbagging the trial judge. Renzi's attorney on the morning of trial knew that his subpoena for Fletcher had been returned "not found," and with Renzi's help, he could determine whether or not Fletcher was in the courtroom. He made no motion for a continuance but elected to proceed into the trial without saying anything to the trial judge about his unsuccessful efforts to locate Fletcher. He reinforced this election to proceed rather than to move for a continuance when there was a hearsay objection during Renzi's testimony. An intelligent election was made, and Renzi should be required to abide by the election.

This election to proceed knowing that Fletcher would not be present was an obvious trial strategy, and a good one under the circumstances. Without Fletcher's testimony, there would simply be the word of Kreitzer against that of Renzi. The jury still found Renzi guilty, and he claims a constitutional denial resulted from his election to proceed to trial. I do not think our court should encourage such an obvious ploy. If Renzi and his attorney actually believed they had been misled by the prosecution, they were careful not to mention it until after the jury found Renzi guilty.

On Page 159 the majority makes reference to certain representations from Ren-

zi's attorney that were accepted by the district court. If these are meant to be findings of fact, I would find them clearly erroneous because they are not supported by the record.

I can find no constitutional violation, and I would deny the writ and reverse.