Merrill E. **FIELDS**, Petitioner–Appellant,

v.

**ATTORNEY GENERAL OF the STATE OF MARYLAND; Kenneth E. Taylor, Warden, Respondents–Appellees.**

No. 90–6695.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1991.

Decided Feb. 26, 1992.

As Amended March 23, 1992.

Steven H. Goldblatt, Director, Appellate Litigation Clinical Program, Washington, D.C. (Beth E. Cook, Supervising Atty., James I. Crowley, Student Counsel, David A. Moss, Student Counsel, Appellate Litigation Clinical Program, on brief), Washington, D.C., for petitioner-appellant.

Sara Elizabeth Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, Md., for respondents-appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINSON, Circuit Judge, and ELLIS, District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

ELLIS, District Judge:

Merrill Fields appeals from the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition alleges constitutional deprivations arising out of events surrounding plea bargaining conducted in connection with state daytime housebreaking charges against him. Specifically, Fields alleges that (i) he was denied his Sixth Amendment right to counsel at a critical stage of the criminal proceedings and his Fourteenth Amendment rights to Due Process and Equal Protection when his appointed counsel failed to appear on his behalf at his two rearraignments; (ii) he was deprived of his Sixth Amendment right to effective assistance of counsel in connection with his guilty plea; and (iii) he was denied fair play and equity under Maryland law when the state declined to resurrect plea bargain offers contemplated, but not consummated, at his rearraignments. The district court denied Fields' petition, holding that (i) arraignments are not critical stages of criminal proceedings requiring counsel under the Sixth Amendment; (ii) Fields failed to meet the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test for ineffective assistance of counsel; (iii) the facts do not support Fields' claim that he was denied fair play and equity under Maryland law; and (iv) the court could not fashion an effective remedy, even if Fields were entitled to relief. Although we decline to adopt some of the district court's reasoning, we find the result is sustainable on other, appropriate grounds. We therefore affirm.

### I.

In January 1988, Merrill Fields faced two separate daytime housebreaking charges. Each carried a twenty year maximum sentence. He was scheduled to be arraigned on one of these, Case No. 58735705, on January 13, 1988. No arraignment date had yet been scheduled for the second charge, Case No. 28802203. Michael Gambrill of the Public Defender's Office represented Fields at the January 13th arraignment. On that occasion, the prosecutor, Louis Coleman, offered a cap of seven years' imprisonment in exchange for a guilty plea. The presiding judge, Judge

Silver, indicated that if such a plea agreement were consummated and a guilty plea entered, he would impose a sentence of only eighteen months. Presumably in response to this, Coleman then offered Fields a plea bargain of eighteen months' imprisonment in exchange for a guilty plea. Gambrill informed Fields of this offer, but apparently advised him to postpone his acceptance until the second housebreaking count, Case No. 28802203, could be consolidated with the first count.[1] Fields indicated to Gambrill his willingness to accept the eighteen-month offer and his further desire to have Gambrill negotiate a second plea bargain for the second charge.[2] Gambrill therefore asked that Fields be arraigned in Case No. 58735705 on a future date to allow the two cases to be consolidated. Rearraignment was scheduled for February 2, 1988, before Judge Silver. Coleman agreed that the eighteen-month offer on the first count would remain open until the rearraignment. Trial was set for February 29, 1988.

Gambrill did not attend his client's rearraignment on February 2nd.[3] Advised by prosecutor Roman Choma that arraignment in the second case was now set for February 10th, Judge Silver continued the rearraignment to that date to allow the two cases to be arraigned together. No plea offers were made or discussed at the brief February 2nd hearing. Fields was present, but apparently believed he could neither accept nor reject any plea offers in the absence of his attorney, and thus did not raise the issue.

On February 10th, Judge Silver rearraigned Fields in Case No. 58735705 and arraigned him in Case No. 28802203. Again, Gambrill failed to appear.[4] Choma represented the government. At the time, Choma was considering a plea bargain offer of two years' imprisonment on the sec-

---

1. During the state post-conviction hearing, Gambrill testified:

   My advice to clients who were in arraignment with a plea offered to him, but had another case in the system, my advice to them was to try to consolidate them, because you could plead today to, say, one year, and the other case coming through the system, came through a significant period later or even a week later, that would be additional things to be considered in sentencing guidelines and give you an enhanced punishment. Whereas, if you had the two cases consolidated, it was more likely that you would get concurrent time rather than receive two separate sentences.

   And with regard to Mr. Fields, my recollection is that we agreed, he and I agreed to have the cases consolidated for the purpose of the plea, so he would not likely get consecutive time, but more likely get concurrent time.

2. Fields asserts that he expected Gambrill to accept the eighteen-month offer on January 13th. He maintains that it was his understanding that the course of action Gambrill proposed insured that he would have both the eighteen-month agreement and the possibility of another plea bargain for the second count. Whatever Fields' understanding may have been at the time, it is uncontested that no acceptance of the offer was communicated by Gambrill to the prosecutor.

3. The record is unclear as to the reasons for Gambrill's absence. Gambrill surmised that he must have been in trial on another case. Taken as a whole, Gambrill's testimony at the post-conviction hearing painted a disturbing picture

of a harried public defender system, where attorneys, carrying forty to fifty cases at any one time, may handle fifteen to twenty cases a day. According to Gambrill, a public defender may be required to handle arraignments in twenty to forty cases at a single court docket session. Equally troubling, yet readily understandable in the circumstances, is the following excerpt from Gambrill's testimony at the state post-conviction hearing:

   Q: Did you represent an individual by the name of Merrill Fields, starting on January 13th, 1988?
   A: I am told that I did.
   Q: Do you recognize Mr. Fields today?
   A: He looks familiar.
   Q: All right. Who were you referring to?
   A: The gentleman in the extreme—well, to your extreme right, in the blue shirt and the tie.
   Q: Indicating Merrill Fields, for the record, Your Honor.
   THE COURT: I am interested in your answer. You said you have no independent recollection of representing him?
   THE WITNESS: Well, the State's Attorney mentioned a particular date, Your Honor. I have no independent recollection that I represented him at that particular time. I do know that I represented an individual by the name of Merrill Fields, and this gentleman sitting here looks very familiar, and it is not that—it is just that I represented so many people, I can't, I wouldn't be—but this gentleman looks like a former client.

4. On this date, the record reflects Gambrill was in trial on a murder case for another client.

ond charge, but was unable to communicate any offer to Fields because of Gambrill's absence.[5] He did record the contemplated offer in Fields' case file. Another public defender present in the courtroom was unfamiliar with Fields' case and could not assist Fields because the case file was in Gambrill's possession.

Fields appeared for trial on February 29, 1988, before Judge Hubbard. Gambrill was present. Prosecutor Jack Lesser offered to recommend a seven-year cap in exchange for guilty pleas on both counts. Fields rejected this offer. Gambrill then objected to the state's refusal to honor the original eighteen-month offer in Case No. 58735705 and the two-year offer in Case No. 28802203 [6] and indicated that he intended to call prosecutors Coleman and Choma to testify regarding the offers and whether they remained open.[7] Judge Hubbard indicated that if any open offers were below the state sentencing guidelines' ranges, she would require argument about why the court should accept them.[8] She then continued the case until April 19, 1988. Thereafter, Lesser expressly withdrew the seven-year offer.

On April 19, 1988, Fields, accompanied by Gambrill, appeared again before Judge Hubbard for trial. Gambrill did not raise the issue of the earlier arraignment offers, nor did he call Coleman or Choma to testify. At Fields' instigation, Gambrill made a counteroffer to the state. Following negotiations, the parties agreed that Fields would plead guilty in both cases in exchange for the state's recommendation of concurrent ten-year terms of imprisonment, of which five years of each would be suspended. The agreement included a term of probation following imprisonment, as well as drug screening and treatment. During the ensuing plea colloquy, Judge Hubbard and Gambrill questioned Fields regarding the voluntariness of his plea and advised him of the rights he would waive by pleading guilty. Importantly, he was advised that his appeal rights would be limited to issues of coercion of the plea, jurisdiction of the court, receipt of a sentence greater than the statutory maximum, and ineffective assistance of counsel. Apropos of this last issue, Fields, in the plea colloquy, stated, "I am very pleased with my counsel." Thereafter, he pled guilty to both counts.[9] The court accepted the pleas and sentenced Fields to two concurrent ten-year terms of imprisonment, with five years of each term suspended, and five years of probation upon release from confinement.

Fields then petitioned for post-conviction relief in the Circuit Court for Baltimore

---

**5.** Ethical rules prohibit a prosecutor from communicating with a defendant who is represented by counsel. *See, e.g.,* ABA Standards for Criminal Justice 3–3.10 (2nd edition 1980 & Supp. 1986).

**6.** The record does not reflect how Gambrill learned of the two-year offer.

**7.** Hotly contested by the parties is the issue of the expiration of the plea offers. The government contends that the eighteen-month offer on Case No. 58735705 expired on February 2nd. On the trial date, however, the prosecutor advised the court that a notation on the file, presumably made by Choma, indicated that the offer had been left open until February 10th. Gambrill testified that he understood the January 13th offer was to be left open until Fields' two cases could be consolidated, which did not occur until February 10th.

With respect to the two-year offer, Choma testified that even if it had been communicated to Fields, the offer would have expired, consistent with customary practice, as soon as the case was called for arraignment on February 10th.

The state court found that the two-year plea offer in Case No. 58735705 expired on February 2nd. This is an error, perhaps inadvertent, since the alleged two-year offer applied to Case No. 28802203, not Case No. 58735705. Ultimately, our disposition of this appeal does not require that we resolve the dispute over precisely when the offers expired.

**8.** The record does not disclose whether the plea offers were within the Maryland state sentencing guidelines.

**9.** During the plea colloquy, Fields admitted his guilt in Case No. 28802203, but denied having committed the offense charged in Case No. 58735705. Having concluded that the factual record supported Fields' guilty plea in the latter case, Judge Hubbard permitted Fields to enter an *Alford* plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (permitting a defendant to plead guilty without admitting factual guilt to take advantage of a state's plea bargain offer does not offend the Constitution).

City, claiming that Gambrill's absence at the two rearraignments cost him the eighteen-month and two-year plea bargains, resulting in his receipt of a harsher sentence. Specifically, he alleged: (i) denial of the Sixth Amendment right to counsel at the arraignments; (ii) denial of the right to the assistance of counsel at the arraignments under the Due Process and Equal Protection Clauses of the Fourteenth Amendment; (iii) denial of the right to effective assistance of counsel under the Sixth Amendment; and (iv) denial of the right to fair play and equity under Maryland law. Following a state court post-conviction hearing, Fields' petition was denied. Having exhausted his state remedies, Fields petitioned *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The district court denied Fields' petition, holding (i) that Fields had not been denied counsel at a critical stage of the criminal proceedings because in Maryland arraignments are not adversarial proceedings requiring the assistance of counsel; (ii) that Gambrill's failure to attend the rearraignments did not result in violations of Fields' Due Process and Equal Protection rights under the Fourteenth Amendment; and (iii) that Fields' ineffective assistance of counsel claim failed because a showing of prejudice required under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), had not been made. Specifically, the district court found nothing in the record indicating that Fields intended to accept the original plea offers, nothing indicating that the trial judge would have accepted the arraignment plea bargains, and nothing delineating the full terms of the alleged plea bargains, particularly whether the prison sentences were to run concurrently or consecutively. Alternatively, the district judge held that even if Fields had prevailed on the merits of his claims, no effective remedy could be fashioned. Specific performance was unavailable because there was no evidence of detrimental reliance by Fields on any plea offers and because the terms of the original plea offers were uncertain. Nor would repleading assure Fields the relief he sought; a state court would not be bound to accept any new plea or follow any new plea recommendation. *Fields v. Singleton*, No. H–90–61 (D.C.Md. Oct. 22, 1990).

This appeal followed. On February 27, 1991, we granted a certificate of probable cause and appointed counsel for Fields.

## II.

■ We address first Fields' constitutional claims of denial of counsel at a critical stage of criminal proceedings and denial of Due Process and Equal Protection. As these present questions of law, we review them *de novo*. *See, e.g., Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166–67 (4th Cir.1988); *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n. 12 (4th Cir. 1987).

■ It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations.[10] *Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235 (1973) (holding that a counseled guilty plea barred a state prisoner's claim of racial discrimination in the selection of the indict-

---

**10.** Fields contends that the state waived its right to assert this procedural bar by failing to raise it in the post-conviction hearings in either state court or federal district court. No waiver has occurred as a result of the government's tardiness. At most, the issue should be remanded for consideration by the lower courts. But we decline to do so. Remanding the case now would be neither efficient nor sensible and would unduly disrupt the federal habeas review process. *Cf. Granberry v. Greer*, 481 U.S. 129, 133–34, 107 S.Ct. 1671, 1674–75, 95 L.Ed.2d 119 (1987) (holding, in a habeas case involving the state's failure to raise a non-exhaustion defense

until the federal appellate level, that the appellate court was neither required to dismiss the case nor obligated to regard the state's omission as a waiver of the defense: "[t]he court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of petitioner's claim."). Fields is not prejudiced by our considering the issue now, for he had an adequate opportunity in this forum to respond to the government's argument, and did so forcefully, although ultimately unpersuasively.

ing grand jury). *See also Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (valid guilty plea barred review of claim of impermissible burden on right to jury); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (review of allegations of coerced confessions foreclosed); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (same); *United States v. Wiggins,* 905 F.2d 51, 52 (4th Cir.1990) ("A defendant who enters a guilty plea waives the right to raise a constitutional challenge to his or her conviction ... except in narrow circumstances.") (citation omitted). Once judgment on a plea is final, collateral inquiry is limited to whether the plea itself was counseled and voluntary.[11] *See, e.g., United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102

L.Ed.2d 927 (1989); *Mabry,* 467 U.S. at 508–09, 104 S.Ct. at 2546–47; *Tollett,* 411 U.S. at 266–67, 93 S.Ct. at 1606–07; *Brady,* 397 U.S. at 749–58, 90 S.Ct. at 1469–74; *McMann,* 397 U.S. at 766–772, 90 S.Ct. at 1446–49; *Parker,* 397 U.S. at 794–98, 90 S.Ct. at 1461–63.

Fields, however, seeks to invoke an exception to this general principle recognized by the Supreme Court in *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).[12] There, the Court held that federal habeas review is available "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues...." 420 U.S. at 293, 95 S.Ct. at 891–92.[13] The meaning of "state law" in the Court's holding, however, is arguably ambiguous. It clearly includes state statutory law, as was the case in *Lefkowitz.* At least two circuits have extended *Lefkowitz* beyond state statutory law to include state common law and procedural practice.[14]

---

**11.** In *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), the Supreme Court explained the *Tollett* line of cases:

The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

*Id.* at 63 n. 2, 96 S.Ct. at 242 n. 2 (emphasis in original).

**12.** A second narrow exception for challenges on double jeopardy grounds has no relevance here. *See Menna,* 423 U.S. at 61, 96 S.Ct. at 241.

**13.** In *Lefkowitz,* the defendant, having entered a valid guilty plea in a New York state court, appealed the denial of his pretrial motion to suppress. A New York state statute expressly permitted appeals from adverse decisions on suppression motions following judgment on a guilty plea. After exhausting his state court appeals, Newsome sought and received federal habeas review. The Court reasoned that denying Newsome federal habeas review would deprive him of a federal forum and frustrate the state's policy of according those who plead guilty the same opportunity to appeal denied

suppression motions as is afforded those who go to trial. 420 U.S. at 292, 95 S.Ct. at 891.

New York adopted its statute in an effort to reduce congested dockets by providing for post-guilty plea appellate review of unsuccessful pre-trial suppression motions. *Id.* at 293, 95 S.Ct. at 891. The Supreme Court concluded that in the context of the New York criminal justice system:

The guilty plea operates simply as a procedure by which the constitutional issues can be litigated without the necessity of going through the time and effort of conducting a trial, the result of which is foreordained if the constitutional claim is invalid. The plea is entered with the clear understanding and expectation by the State, the defendant, and the courts that it will not foreclose judicial review of the merits of the alleged constitutional violations.

*Id.* at 289–90, 95 S.Ct. at 889–90 (footnote omitted).

We disagree with Fields' assertion that the second sentence of this passage announces a generally applicable test for determining whether federal habeas review of a post-guilty plea constitutional challenge is permitted. In our view, the sentence merely illuminates the structure and logic of the New York statutory scheme.

**14.** *See Stanley v. Wainwright,* 604 F.2d 379, 380 n. 1 (5th Cir.1979), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980) (*Lefkowitz* applied where Florida courts permitted post-

Fields invites us to adopt this expansive view. We decline this invitation. Whether "state law" under *Lefkowitz* encompasses more than statutory law is a question we need not reach. Here, no Maryland statute, common law, or procedural practice authorizes post-guilty plea review of prior constitutional violations. *See McCoy v. Warden of the Md. Penitentiary,* 234 Md. 616, 617, 198 A.2d 245, 246 (1964) (under Maryland law, a guilty plea waives all claims of non-jurisdictional defects); *Deyermond v. State,* 19 Md.App. 698, 702–03, 313 A.2d 709, 712 (1974) (same). Thus, even assuming, *arguendo,* that the *Lefkowitz* exception to *Tollett* extends to Maryland common law and procedural practice, *Lefkowitz* is inapplicable here.

Having determined that the *Lefkowitz* exception to *Tollett* has no force here, we can now dispose of Fields' first two grounds for relief. Fields alleges that because Gambrill did not attend the rearraignments, he was denied counsel at a critical stage of the proceedings in violation of the Sixth Amendment. While we ultimately arrive at the same result as the district court on this issue, we do so for a different reason. The district court, without consideration of *Tollett,* reached the merits of Fields' denial of counsel claim. Yet this claim concerns an alleged constitu-

tional deprivation that occurred prior to Fields' guilty plea and is unrelated to it. *Tollett* therefore bars this claim. Given this, we need not reach the merits. Similarly, *Tollett* forecloses review of Fields' further claim that he was denied Due Process and Equal Protection under the Fourteenth Amendment because of Gambrill's failure to attend the rearraignments. This claim, too, relates to events antecedent to Fields' guilty plea.[15] In the context of this claim, the district court correctly observed that Fields could collaterally attack his plea only by challenging its consensual character. While we disagree with the district court's view that Fields "does not attack the voluntariness and intelligence of his guilty plea," [16] we affirm the district court's holding that Fields' Due Process and Equal Protection claims fail.

### III.

◼ The heart of Fields' petition is his claim of ineffective assistance of counsel, in violation of the Sixth Amendment. A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea.[17] *See Hill v. Lockhart,* 474

plea challenges to the constitutionality of confessions); *Canary v. Bland,* 583 F.2d 887, 890 (6th Cir.1978) (although no state statute applied post-plea federal habeas review of prior juvenile transfer proceedings available where Kentucky courts consistently permitted appeals to challenge the validity of such proceedings).

15. To the extent, if any, that Fields' Fourteenth Amendment claim may relate to errors in the plea itself, and is thus not an antecedent constitutional claim, the analysis of the ineffective assistance claim in the following section is dispositive.

16. The voluntariness of a guilty plea may depend, to a degree, on the effectiveness of the assistance rendered by counsel. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) ("Where ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' ") (quoting *McMann,* 397 U.S. at 771, 90

S.Ct. at 1449) (citation omitted). Given this, the consensual character of a plea is necessarily implicated when, as here, a defendant alleges ineffective assistance of counsel in connection with his plea.

17. Conduct of counsel occurring prior to entry of a guilty plea may be examined in evaluating the extent to which the prior representation influenced the voluntary and intelligent character of the guilty plea entered. *See Tollett,* 411 U.S. at 266–67, 93 S.Ct. at 1607–08 ("while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief"); *Hopper v. Garraghty,* 845 F.2d 471 (4th Cir.) (reviewing attorney's failure to obtain a psychiatric evaluation prior to prosecutor's plea offer), *cert. denied,* 488 U.S. 843, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988); *Dufresne v. Morgan,* 572 F.Supp. 334, 341–42 (D.R.I.1983) ("the history of counsel's representation should be explored" to determine if counsel's assistance was so ineffective as to render the plea involuntary), *rev'd on other grounds,* 729 F.2d 18 (1st Cir.1984).

U.S. 52, 53–59, 106 S.Ct. 366, 367–70, 88 L.Ed.2d 203 (1985). *See generally Broce,* 488 U.S. at 569, 109 S.Ct. at 762; *Mabry,* 467 U.S. at 508–09, 104 S.Ct. at 2546–47; *Brady,* 397 U.S. at 749–58, 90 S.Ct. at 1469–74; *McMann,* 397 U.S. at 766–772, 90 S.Ct. at 1446–49; *Parker,* 397 U.S. at 794–98, 90 S.Ct. at 1461–63. Ineffective assistance of counsel claims are governed by the settled doctrine of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). It is equally settled that this doctrine applies to ineffective assistance claims asserted in connection with guilty pleas. *Hill,* 474 U.S. at 57, 106 S.Ct. at 369.

*Strickland* announces a two-part test for evaluating a lawyer's effectiveness. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687–88, 104 S.Ct. at 2064–65. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. These two components are typically referred to as the "performance" and "prejudice" components. *Id.* at 698, 104 S.Ct. at 2070. The defendant bears the burden of proving *Strickland* prejudice. *See Hutchins v. Garrison,* 724 F.2d 1425, 1430–31

(4th Cir.1983), *cert. denied,* 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984). If the defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. Our analysis may properly begin, then, with the prejudice prong.[18]

The pivotal question is what type of prejudice Fields must demonstrate. In *Hooper v. Garraghty,* 845 F.2d 471 (4th Cir.1988), we stated:

> When a defendant challenges a conviction entered after a guilty plea, "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

845 F.2d at 475 (quoting *Hill,* 474 U.S. at 59, 106 S.Ct. at 370). *Accord Craker v. McCotter,* 805 F.2d 538, 542 (5th Cir.1986) (allegation that effective counsel would have negotiated a better plea bargain insufficient to establish prejudice under *Hill*). Here, Fields concedes that even with competent counsel he would not have stood trial. To the contrary, the crux of Fields' case is that with effective assistance he would have pled to a different plea bargain and received a more favorable sentence. Manifestly, therefore, Fields cannot make the showing of prejudice required under *Hooper* and *Strickland.*[19] But our

18. We address briefly the issue of the appropriate standard of review for *Strickland* claims. Under *Strickland,* state court determinations of historical facts are presumptively correct. 466 U.S. at 698, 104 S.Ct. at 2070. *See also Clozza v. Murray,* 913 F.2d 1092, 1100 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); 28 U.S.C. § 2254(d). District court findings are subject to the clearly erroneous standard set forth in Rule 52(a), Fed. R.Civ.P. As it happens, however, the individual components of the ineffective assistance inquiry are mixed questions of law and fact, *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070; *Hoots v. Allsbrook,* 785 F.2d 1214, 1219 (4th Cir.1986), and are therefore reviewed *de novo. See, e.g., Becton v. Barnett,* 920 F.2d 1190, 1192 (4th Cir. 1990).

19. A defendant has no constitutional right to a plea bargain. *See Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30

(1977). Nor is there a constitutional right to have a plea bargain, once made, accepted by the court. *See Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962); *see also* Rule 11, Fed.R.Crim.P. The state may withdraw a plea offer at any time before it is accepted or detrimentally relied upon. *See Weatherford,* 429 U.S. at 561, 97 S.Ct. at 846. *See also Custer v. State,* 86 Md.App. 196, 200, 586 A.2d 51, 53 (1991) (under Maryland law, prosecutor is free to withdraw plea offers at any time before plea is accepted by court). In addition, the court may accept or reject the plea at its discretion. *See* Rule 11, Fed.R.Crim.P.; *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); Rule 4–243(b) and (c), Md.Rules of Procedure (court may reject sentence recommended in plea agreement). Thus, Fields would not prevail even if, as he urges, we were to apply the "reasonable probability of a different outcome" standard of preju-

inquiry cannot end here, for prejudice is presumed under *Strickland* in certain circumstances. For example, actual or constructive denial of counsel is legally presumed to result in prejudice, as is state interference with counsel's assistance. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. Importantly, prejudice is presumed, and the prejudice test satisfied, "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718, 1719, 64 L.Ed.2d 333 (1980)) (citation omitted). To prevail under this standard, a defendant must do more than show the possibility of a conflict of interest. He must point to an actual conflict of interest and show that such conflict of interest actually affected his attorney's representation. *See Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719 ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.").

Fields maintains that while advising him to plead guilty, Gambrill labored under an actual conflict of interest arising from a divergence between Fields' interest in resurrecting and enforcing the arraignment plea agreements and Gambrill's interest in protecting his own professional reputation and good-standing.[20] Fields contends that Gambrill did not vigorously advocate enforcement of the "lost" plea agreements when the case was called for trial on February 29th, because to do so would have required Gambrill to confess his own negligence or incompetence. Fields argues that just as trial counsel cannot be expected to assert his own incompetence on direct appeal, *see Alston v. Garrison,* 720 F.2d 812, 816 (4th Cir.1983), *cert. denied,* 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984), Gambrill could not be expected to assert his own prior shortcomings on Fields' trial date.

The record simply does not support Fields' claim in this regard. On the first trial date, Gambrill frankly admitted in open court his absence at the rearraignments and the resulting confusion about the status of the plea offers. Once these acts were publicly acknowledged, any con-

dice under *Strickland.* Nothing in the record establishes that Fields would have consummated the earlier plea agreements even if Gambrill had attended the rearraignments. As the district court found, only Fields' *post hoc* "bald assertion" exists to prove that he would have accepted the arraignment plea offers. Moreover, Fields has not proved that the trial judge would have accepted those offers. Fields argues that because Judge Silver indicated that he would have imposed an eighteen month sentence at the time of the first arraignment, it is probable that Fields would have received a shorter sentence if Gambrill had appeared at the rearraignments. This is not necessarily so, for as the district court observed Judge Hubbard, on the trial date, expressed reservations that the offers might have been outside the applicable state sentencing guidelines. The record is insufficient to determine whether the offers were within the applicable state guidelines. In any event, determinations of prejudice under *Strickland* may not be predicated on evidence about a particular judge's sentencing practices. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068. In sum, we cannot say on the record before us that there is a reasonable probability that the outcome would have been different had Gambrill attended the rearraignments.

**20.** We reject the government's contention that Fields' conflict of interest argument raises a new claim not exhausted in the state courts. Fields raised in state court the issue of ineffective assistance of counsel and specifically asserted that Gambrill failed on the trial date to argue for implementation of the original plea offers. The conflict of interest argument merely articulates a purported cause of his attorney's alleged incompetence. The substance of the claim was fairly presented to the state court, *see Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982), the facts underlying the federal claim were fully disclosed, and a specific claim of constitutional deprivation was expressly asserted. *See Renzi v. Virginia,* 794 F.2d 155, 158 (4th Cir.1986). To hold otherwise would be to apply an overly technical interpretation of the principles of exhaustion. The government also contends that Fields failed to allege the issue adequately in his federal habeas petition. In our view, however, Fields' petition is sufficient, for we appropriately interpret the efforts of a *pro se* petitioner liberally. *See, e.g., McNair v. McCune,* 527 F.2d 874 (4th Cir.1975); *Ham v. North Carolina,* 471 F.2d 406 (4th Cir. 1973).

flict that might have stemmed from Gambrill's interest in protecting his professional standing evaporated. Thus, although Fields arguably demonstrates a possibility that a conflict of interest could have infected Gambrill's performance, he fails to document a concrete conflict that actually affected the advice he received. Because he is unable to establish prejudice under *Strickland*, Fields' ineffective assistance claim necessarily fails.

Importantly, the result reached here comports with the substantive equities in this case. The record reflects that Fields' plea was voluntary and intelligent. During his plea colloquy, Fields was twice asked whether anyone forced, coerced, or threatened him into pleading guilty and he twice answered under oath in the negative. When asked, "Are you sure that you understand everything?", Fields responded, under oath, "I understand everything." The transcript of the plea proceedings discloses that at no time during his plea did Fields mention the past plea offers. Nor did he express dissatisfaction with Gambrill's performance. To the contrary, he volunteered, under oath, the comment, "I am very pleased with my counsel."[21] Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 74–75, 97 S.Ct. 1621, 1629–30, 52 L.Ed.2d 136 (1977); *Little v. Allsbrook*, 731 F.2d 238, 239–40 n. 2 (4th Cir.1984). Fields presents no evidence that suggests his representations during his plea were untruthful or involuntary, and he is therefore rightly bound by his sworn statements. The voluntary and intelligent character of Fields' plea bargain is further evidenced by the fact that the plea agreement was favorable to him and accepting it was a reasonable and prudent decision. His punitive exposure, had he been convicted at trial, would have been twenty years' imprisonment on each count; instead, he was sentenced, effectively, to a total of five years. Significant, too, is that the plea offer Fields eventually accepted derived from his own proposal to the government, a proposal he presumably made based on his view of his best interests and which provided for a lesser sentence than the immediately preceding plea offer made by the government, which would have capped the sentence at seven years.[22] In sum, while Fields in hindsight may now wish he had not attempted to consolidate the two charges against him and had pled instead to the eighteen-month offer at the first arraignment, nothing in the record supports the proposition that his guilty plea was other than voluntary and intelligent.

For all of the foregoing reasons, we hold that the district court correctly denied Fields' ineffective assistance of counsel claim.

## IV.

■ Fields' fourth and final ground in his habeas petition is denial of fair play and equity under Maryland law. The fatal defect here is that federal habeas corpus relief is unavailable for this state law claim. 28 U.S.C. § 2254(a) (providing that federal habeas review of a state court judgment is available "only on the ground that ... [a petitioner] is in custody in violation of the Constitution or laws and treaties of the United States."). Since Fields' fair play and equity claim asserts no violation of the Constitution or federal law, § 2254 furnishes no basis for relief. *See Mabry*, 467 U.S. at 507, 104 S.Ct. at 2546 ("Respondent can obtain federal habeas corpus relief only if his custody is in violation of the federal Constitution."). Moreover, as the district court correctly found, the claim is unsupported by the facts. Fields cannot contend

---

**21.** Fields made this comment in response to his attorney's question, "You and I have discussed the case and communicated through the mails, is that correct, sir?"

**22.** It is also worth noting that Gambrill's advice on January 13, 1991, that Fields delay accepting the eighteen-month offer on the first charge until the two pending charges could be consolidated was a reasonable and judicious legal strategy and probably improved Fields' chances of receiving concurrent, rather than consecutive, sentences.

that the state breached any prior plea agreements because none existed.

## V.

■ Finally, assuming, *arguendo*, that Fields could prevail on the merits of his claims, it is simply beyond the power of any court to fashion a remedy that would guarantee Fields the relief he seeks in his petition. As the district court correctly concluded, specific performance of the arraignment plea offers would be available only if Fields had accepted a valid plea agreement or detrimentally relied on a valid plea agreement that was subsequently withdrawn. *See Santobello*, 404 U.S. at 262, 92 S.Ct. at 499; *United States v. Aguilera*, 654 F.2d 352, 353 (5th Cir.1981) (no specific performance of a plea offer neither accepted nor relied on by defendant). And even where there has been detrimental reliance, specific performance is not a constitutionally mandated remedy. *See Santobello*, 404 U.S. at 263, 92 S.Ct. at 499; *Mabry*, 467 U.S. at 510 n. 11, 104 S.Ct. at 2548 n. 11. Rather, under *Santobello*, if the government breaches a plea agreement, the sentence must be vacated and the state court must either (i) enforce the plea bargain or (ii) give the defendant an opportunity to go to trial on the original charge. *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499.

Here, there is no evidence that Fields accepted or detrimentally relied upon any plea agreements. Thus, Fields is not entitled to specific performance. Furthermore, as the district court found, "the uncertainty surrounding the original plea offers precludes specific performance as an appropriate remedy." *Fields v. Singleton*, No. H90–61 (D.C.Md. Oct. 22, 1990). Practically speaking, it would be impossible to know what terms to enforce. Alternatively, Fields might be allowed to withdraw his plea and either replead or proceed to trial. But as the district court observed, the state prosecutor would not be bound to offer either of the original plea offers. And the state court, although barred from imposing a harsher sentence, would not be obligated to accept the original plea offers or to sentence Fields to a lower sentence than the one he now serves. Fields clearly does not want to go to trial. For these reasons, the remedy Fields seeks—enforcement of more lenient sentencing recommendations contained in prior plea offers—is simply unavailable.

## VI.

In conclusion, for the above-stated reasons, we affirm the district court's denial of Fields' petition for a writ of habeas corpus.

AFFIRMED.