**Marvin David MOORE, Petitioner,**

v.

**George DODSON, Warden, Respondent**

**Civ. A. No. 95–770–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Nov. 1, 1995.

Bruce M. Steen, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for petitioner and Marvin David Moore, Mitchell, VA, pro se.

Thomas Drummond Bagwell, Office of the Attorney General, Richmond, VA, for respondent.

## MEMORANDUM OPINION

TURK, District Judge.

Marvin David Moore, a Virginia inmate at the Coffeewood Correctional Center, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that he was denied his rights under the Sixth and Fourteenth Amendments of the United States Constitution. Specifically, Moore alleges that 1) he received ineffective assistance of counsel at his state court trial 2) the Commonwealth failed to disclose exculpatory material that prejudiced his case, and 3) his waiver of a jury trial was not made knowingly and intelligently.

This matter is before the court for a disposition on the merits of the petition pursuant to a motion filed by the respondent. The petitioner filed opposition papers to the respondent's motion making the matter ripe for the court's consideration. After reviewing the petitioner's original prayer for relief, the respondent's motion, all the papers filed in opposition, and the evidence heard at the oral argument on October 2, 1995, the court finds that George Dodson's motion must be granted and the petition must be dismissed on the merits.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Marvin David Moore was indicted in 1989 on one count of malicious wounding in violation of § 18.2–51 of the Code of Virginia. Mr. Moore pleaded not guilty and waived his right to be tried by a jury. He proceeded to trial and on December 4, 1989 the Honorable Judge Pickford of the Circuit Court of the City of Charlottesville, found the petitioner guilty of the one count charged in the indictment.

The basis of the charge was a complaint by Maurice L. Faulconer that he had been assaulted on May 5, 1989 by Mr. Moore and one Raymond Nathaniel Saylor. On that date Faulconer was walking down Tenth Street in Charlottesville, Virginia. As he

was walking, the victim was approached by Saylor who was selling crack cocaine. Faulconer expressed interest and waited for Saylor to return with the drugs so a sale could be consummated. When Saylor returned in his car he called Faulconer over and requested to see his money before any sale would be made. When Faulconer showed his money, Saylor showed the drugs. Faulconer refused to go ahead with the purchase and left the car saying that he believed that the "rock" was actually soap.

The trial court found that both Saylor and the petitioner ran after Faulconer. One hit him in the face with a pipe and the other kicked him in the face when he was lying on the ground. At the trial, Saylor admitted that he had an gotten into a fight with Faulconer. According to Saylor, the petitioner was not present during his altercation with the victim. Consistent with that testimony, Moore asserted at trial that he saw the fight between Saylor and Faulconer but was approximately two hundred yards away at the time. However, the victim testified that he was kicked in the face by Moore and hit across the face by Saylor. On the basis of the victim's trial testimony and other evidence, the Judge, sitting as finder of fact, found Moore guilty beyond a reasonable doubt.

Petitioner's prayer for a writ revolves around Mr. Faulconer's May 10, 1989 statement to the police. In that statement the victim stated that it was Saylor who kicked him in the face and Moore who hit him with the pipe. The petitioner claims that the inconsistency between the police report and Faulconer's later testimony rendered the report discoverable either *ab initio* as exculpatory, or at the very least, when Faulconer took the stand at Moore's trial and testified.[1] However, the defense counsel was not made aware of the police report until the date of Moore's sentencing. Petitioner further claims that he told his defense counsel to request from the Commonwealth Attorney any prior statements made by any of the witnesses. According to Moore, his trial

counsel never requested this material, though he told Petitioner that in fact he had filed a *Brady* motion with the Commonwealth. As a result of his trial counsel's failure to file a discovery motion and the Commonwealth Attorney's failure to disclose the police report before trial, the Petitioner feels he was denied effective assistance of counsel and due process. He further maintains that without awareness of the police report's existence he could not, and did not make a knowing and intelligent waiver of a jury trial.

At the petitioner's sentencing on March 15, 1990 Judge Pickford became aware of the inconsistency between the police report and Falconer's trial testimony. Moore's trial counsel argued at the sentencing that he was not aware of the inconsistency prior to trial and that the discrepancy raised substantial doubts about the petitioner's guilt. The court overruled Moore's post-trial motions for a new trial and to strike the evidence. Judge Pickford was aware of Faulconer's inconsistency and determined that it made no difference in the decision he had rendered as finder of fact.

### B. *PROCEDURAL BACKGROUND*

On June 28, 1990 the Virginia Court of Appeals denied Moore's petition for appeal stating that the petition was untimely filed. The petitioner then filed his first petition for a writ of habeas corpus in the Circuit Court of the City of Charlottesville on the grounds that he was denied the right to appellate review. That petition was granted with respect to the petitioner's appellate rights on February 15, 1991 and the case was continued on the Court's docket for further action. On February 21, 1992 the Court of Appeals denied Moore's habeas appeal from his underlying conviction and on March 26, 1992 the court denied his petition for a rehearing. The Virginia Supreme Court refused Moore's petition for appeal by an order dated August 12, 1992.

---

**1.** The petitioner also asserts for the first time in his federal habeas petition that Saylor testified inconsistently with his statement to the police at a pre-trial hearing held four months before the

trial. As a result of that testimony the petitioner claims that the police report then became discoverable by the defense as an inconsistent statement, whether or not it was exculpatory.

Thereafter, the petitioner filed a second petition for habeas corpus relief in the Circuit Court of the City of Charlottesville raising essentially the same claims he brings forth in the petition currently under consideration by this court. An order was issued dismissing the petition on July 22, 1993 and Moore then appealed the decision to the Virginia Supreme Court which denied the petition on January 19, 1994.

As a result of the preceding actions taken on the petitioner's behalf this court finds that Marvin Moore has exhausted his state remedies and this action is ripe for consideration.

## II. *ANALYSIS*

The case comes before this court on the respondent's written motion. Marvin Moore has responded by filing counter-affidavits and other documentation in opposition to Dodson's motion. The court finds that any disputed issues of fact are irrelevant. Even if all the facts are as the petitioner claims them to be this court cannot issue the requested writ. Moore has simply failed to make out a cognizable claim for a redressable constitutional violation under either the Sixth or Fourteenth Amendments.

### A. *CLAIM ONE—INEFFECTIVE AS-SISTANCE*

 In order to prevail on his ineffective assistance of counsel claim Moore must show not only that his counsel's performance was deficient, he must also show that he was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). For the purposes of this motion the uncontroverted evidence before this court is that Moore's trial counsel lied to him about filing a *Brady* discovery request with the Commonwealth's Attorney. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such a complete failure to vigilantly pursue Moore's rights would indeed constitute "an error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

The respondent contends that this court must presume that the actions taken by Moore's counsel constitute trial strategy and that a reviewing authority cannot engage in "second guessing the attorney with the benefit of hindsight." *See Williams v. Dixon,* 961 F.2d 448, 451 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992). Though courts have held that acts of omission can constitute legitimate maneuvering on an attorney's part, *See Spencer v. Murray,* 18 F.3d 229, 233 (4th Cir.1994) (dealing with DNA evidence), the alleged conduct of Moore's counsel went far beyond failing to request relevant statements from the police and prosecutors. There is simply no reasonable interpretation of "trial strategy" that would encompass blatantly lying to one's client.

However, that does not end the courts inquiry. Moore must still show that his counsel's failure prejudiced his defense. Even though the petitioner may be able to prove complete insufficiency on his trial counsel's part if the complained of conduct were true, the court must dismiss this claim because of the petitioner's failure to meet the prejudice prong of *Strickland.* Contrary to the petitioner's contention, the central question before the trier of fact was not whether Moore had kicked Faulconer in the eye and mouth, but whether he had maliciously wounded the victim as a result of his actions on May 5, 1989. It is fundamentally irrelevant whether Moore kicked the victim in the face or hit him in the face with a pipe since the evidence points to his having done one or the other. Further, even considering the impeachment value that would have attached to Faulconer's allegedly inconsistent statement at trial, Judge Pickford, the trier of fact, was aware of the police report before he imposed sentence and did not feel that it would have changed his decision. *See Correll v. Thompson,* 872 F.Supp. 282, 296–97 (W.D.Va.1994), *rev'd on other grounds,* 63 F.3d 1279 (4th Cir.1995). Thus, trial counsel's alleged errors, even if unreasonable, did not create the "*possibility* of prejudice" let alone infect the "entire trial with error of constitutional dimensions." *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986). The petition must be dismissed on its merits as a matter of law as to this claim.

## B. *CLAIM TWO—DUE PROCESS*

Petitioner's claim here amounts simply to a "different spin" on the same problem presented in the first claim involving the allegedly inconsistent statement given to the police by Faulconer. Here however, Moore claims that the Commonwealth's failure to turn over exculpatory evidence amounted to a due process violation. It is the prosecutor's duty to turn over any exculpatory evidence to the defense even absent a discovery request. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Further, any evidence known by members of the prosecuting office or by the police is imputed to the prosecutor. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Thus, the government's duty to disclose here applies whether the prosecutor had the information prior to trial or not, because Faulconer's statement was in the hands of the police. *Boone v. Paderick*, 541 F.2d 447 (4th Cir. 1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d ·811 (1977).

The evidence at issue again is the statement given to the police by Faulconer on May 10, 1989. Though the respondent contends that the Commonwealth Attorney's office was not "aware" of the police report until March 13, 1990, knowledge of any facts contained therein was imputed to the Commonwealth under *Giglio* and *Boone* as of May 10, 1989. Dodson contends, in the alternative, that any statements contained in the police report were not *per se* exculpatory and thus, not discoverable prior to becoming inconsistent statements. According to facts presented to this court in the petitioner's current prayer for a writ, Faulconer testified inconsistently with his police report at a preliminary hearing occurring well before the trial and so the report became *Brady* material for its impeachment value as of that date. However, the respondent is correct in pointing out that Moore has never raised a factual contention of this variety in any prior state habeas proceeding.

Contrary to the petitioner's position put forth at oral argument before this court, there is a fundamental difference between a contention that the Commonwealth became aware of an inconsistent statement at trial and a position that the Commonwealth failed to disclose such a statement when made well in advance of trial. Further, the fact remains that Moore simply failed to develop any facts regarding presentation of an inconsistent statement by Faulconer at a preliminary hearing during the state court habeas proceedings. When a state has afforded a petitioner such an opportunity to flesh out the material facts supporting a due process contention, he is not entitled to develop further facts in support of the writ in a federal habeas hearing unless cause and prejudice is established. *Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir.1995), *citing*, *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8–12, 112 S.Ct. 1715, 1719–21, 118 L.Ed.2d 318 (1992). The petitioner has not come before this court with any showing of cause, let alone prejudice, and thus, any new factual allegation presented which is intended to support the granting of a habeas writ on the basis of the Commonwealth Attorney's alleged misconduct which occurred prior to Moore's state court trial is procedurally barred. *See Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989).

After consideration of the factual evidence default, Mr. Moore finds himself in the same position on his due process claim as he was regarding the ineffective assistance prong of his argument—he simply can show no prejudice resulted because the finder of fact was aware of the inconsistent statement at issue at the time sentence was imposed. Just as with the *Strickland* standard in ineffective assistance of counsel cases, a petitioner bringing forth a due process challenge must be able to show that the evidence at issue was material and would have affected the outcome of his trial. *See Bagley*, 473 U.S. at 674–75, 105 S.Ct. at 3379–80; *United States v. Powell*, 886 F.2d 81 (4th Cir.1989), *cert. denied*, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct.

2392, 2398, 49 L.Ed.2d 342 (1976). Here, even though the impeachment evidence at issue falls within the scope of *Brady, see Giglio* 405 U.S. at 154, 92 S.Ct. at 766, the fact finder's estimate of the case was not swayed by the disclosure of that evidence. No matter which way Moore turns he is faced with the inescapable and controlling conclusion of Judge Pickford that Faulconer's testimonial reversal on who hit him with the pipe and who kicked him did not affect the outcome of the case in any way.

### III. CLAIM III—JURY TRIAL WAIVER

 The Sixth Amendment provides that, "[T]he accused shall enjoy a right to a . . . trial, by an impartial jury. . . ." In order to have validly given up his right to a jury trial Moore's waiver had to be not only voluntary, but knowing and intelligent considering the relevant circumstances and likely consequences. *Brady* 397 U.S. at 748, 90 S.Ct. at 1469. However, the only "relevant circumstance" at issue for the petitioner's waiver was the possibility that Judge Pickford would, for some reason, render a different verdict on the malicious wounding charge than a jury would give. The trial judge found the waiver voluntary before accepting it and there is no reason to disturb the judgment of that court, or the Virginia appellate courts that have failed to find an involuntary waiver. *See id.* at 749, 90 S.Ct. at 1469. In fact, the petitioner here does not claim that he misunderstood the difference between trial before a judge and before a jury of his peers. Instead, he contends that the failure of the Commonwealth's Attorney to disclose Faulconer's statement to the police "clouded" his understanding of the case. Moore's assertion that he would have proceeded with a jury trial had he known of Faulconer's statement to the police must be regarded with a fair degree of skepticism. *See Hooper v. Garraghty*, 845 F.2d 471 (4th Cir.1988). Further, based on the binding record before this court, Moore's jury trial waiver preceded the inconsistent testimony that Faulconer gave on the stand. Thus, there is no circumstance this court can consider [2] which would have placed the petitioner in a posture of knowing about Faulconer's statements to the police before he waived his right to a jury trial.

Therefore, this claim by the petitioner must be dismissed as well since he has not made out a valid constitutional claim under the Sixth Amendment for an ineffective waiver of the right to a jury trial.

### IV. CONCLUSION

For the reasons stated above, Marvin David Moore's petition for a writ of habeas corpus, brought under 28 U.S.C. § 2254, must be dismissed on the merits as to all claims. The Commonwealth Attorney's failure to disclose the Faulconer statement to the police does not rise to the level of an ineffective assistance of counsel claim, a due process claim, nor can it constitute the basis of an inadequate jury trial waiver. An appropriate order shall be entered this day.

---

**2.** Again, any claim that the inconsistency in Faulconer's testimony occurred at any time prior to trial is barred by the factual default rule set forth in *Keeney*, 504 U.S. 1, 112 S.Ct. 1715, and *Correll*, 63 F.3d 1279.