**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 99-6284

MARKEL ANTOINE WHISONANT,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-96-97, CA-97-971-5-F)

Argued: June 8, 2000

Decided: August 22, 2000

Before WILKINSON, Chief Judge, and WIDENER
and TRAXLER, Circuit Judges.

_____

Dismissed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Karin Scherner-Kim, Student Counsel, Appellate Litiga-
tion Program, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant. Fenita Morris Shepard, Assistant
United States Attorney, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Steven H. Goldblatt, Director, Adam N. Steinman, Supervis-
ing Attorney, Joy M. Hodge, Student Counsel, Appellate Litigation

Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Markel Antoine Whisonant entered a guilty plea to conspiracy to possess with intent to distribute and to distribute cocaine base. <u>See</u> 21 U.S.C.A. § 846 (West 1999). He was sentenced to a 262-month term of imprisonment. Whisonant then filed this petition for relief pursuant to 28 U.S.C.A. § 2255 (West Supp. 2000). The district court determined that Whisonant, under the terms of the plea agreement, had waived his claim for ineffective assistance of counsel based on his attorney's failure to move for the suppression of certain evidence. Concluding the purported waiver was too ambiguous to be valid, we grant Whisonant's application for a certificate of appealability on that issue, <u>see</u> 28 U.S.C.A. § 2253(c) (West Supp. 2000), vacate that portion of the district court's order, and remand for consideration of the merits. However, because Whisonant has failed to make a substantial showing of the denial of a constitutional right as to his remaining claims, we deny his application for a certificate of appealability and dismiss his petition with respect to those claims.

I.

At Whisonant's trial for conspiracy to possess with intent to distribute and to distribute cocaine base ("crack"), the Government called as a witness Yvette Gatling, Whisonant's former girlfriend. In 1994, approximately two years prior to Whisonant's arrest, Gatling had begun cooperating with federal investigators. She was granted

2

immunity from prosecution for her involvement in Whisonant's drug business in exchange for her agreement to assist authorities in the investigation of the drug conspiracy in which Whisonant was involved. Among other things, Gatling testified before the grand jury concerning her knowledge of the conspiracy, provided to the Government various items that were used in the transportation and distribution of the drugs, and eventually testified at Whisonant's trial.

At trial, Gatling described for the jury in detail various aspects of Whisonant's drug activity. According to Gatling, she eventually broke off her romantic liaison with Whisonant, but Whisonant nevertheless phoned her from jail several times following his subsequent arrest. At the time of these telephone conversations, Whisonant had been indicted and had retained legal counsel. Gatling testified that during these conversations, Whisonant told her that "`[i]f you talk to anybody, you have to say you have never seen me with cocaine.'" J.A. 42. Gatling recorded some of these telephone conversations, and the tape recording was admitted into evidence and played for the jury. According to Gatling, the recorded telephone call that was played for the jury had been initiated by Whisonant. The record does not include a transcription of the tape recording, but the district court, in denying Whisonant's § 2255 petition, "clearly recall[ed] hearing the tape at trial and . . . listened to it again for purposes of ruling on the [§ 2255 petition]." J.A. 180. The district court concluded that "Gatling acted as more than a mere listening post" by "elicit[ing] incriminating statements from the defendant concerning the events leading up to his indictment." J.A. 181. The Government does not dispute that Gatling assumed an active role in extracting incriminating statements from Whisonant during the taped telephone conversation.

The tape was admitted into evidence without objection from Whisonant's attorney. Immediately following the playing of the tape for the jury, Whisonant informed the court that he wished to change his plea to guilty. Whisonant then entered into a plea agreement with the Government that provided, in part, as follows:

> 2. The Defendant agrees:
>
> . . .

3

b. To waive knowingly and expressly the right to appeal whatever sentence is imposed on any ground, including any appeal pursuant to 18 U.S.C. § 3742, and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, excepting the Defendant's right to appeal based upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

J.A. 47-48.

Additionally, the plea agreement addressed Whisonant's sentence:

5. The parties agree to the following positions as to sentencing factors, which are not binding on the Court; provided that if Defendant's conduct prior to sentencing changes the circumstances with respect to any such factors, the Government is no longer bound to its position as to those factors:

a. A downward adjustment of 3 levels for acceptance of responsibility is warranted under U.S.S.G. § 3E1.1.

J.A. 52. The Government also agreed "[t]hat it will make known to the Court at sentencing the full extent of the Defendant's cooperation." J.A. 51.

The sentencing court was provided with a presentence report (PSR) that recommended only a two-level downward adjustment to Whisonant's base offense level for acceptance of responsibility. See United States Sentencing Guidelines (U.S.S.G.) § 3E1.1 (1995). The PSR also recommended that the sentencing court impose a two-level enhancement for Whisonant's possession of a firearm during the course of and in relation to his drug-related activity. See U.S.S.G. § 2D1.1(b)(1).

Whisonant objected to the recommended two-level firearm enhancement, and testified at his sentencing hearing that he never car-

4

ried or used firearms during the commission of the charged offense. The sentencing court, however, adopted the PSR's recommendation that the enhancement be imposed. The court also adopted the PSR's recommendation that Whisonant be awarded a two-level reduction for acceptance of responsibility, and Whisonant raised no objection to the fact that he was receiving only a two-level reduction for acceptance of responsibility instead of a three-level reduction as contemplated in the plea agreement. Finally, the sentencing court granted Whisonant's motion for a downward departure on the basis that his criminal history category overrepresented the seriousness of his criminal history. The court then sentenced Whisonant at the bottom of the resulting sentencing range.

Whisonant did not appeal his conviction or sentence. Instead, Whisonant filed this action pursuant to § 2255. In it, he raised three claims: (1) that he was provided ineffective assistance of counsel because his attorney failed to move to suppress the taped telephone conversation between him and Gatling, and that he would not have changed his plea had the tape been excluded from evidence; (2) that the Government breached the plea agreement by not recommending that the sentencing court reduce his offense level by three levels, instead of two, for acceptance of responsibility (thus depriving Whisonant of due process); and (3) that his counsel was ineffective for not objecting to this alleged breach and not pursuing a three-level downward adjustment for acceptance of responsibility himself.

The district court rejected these claims. With respect to the claim that counsel should have moved to suppress the tape, the district court "conclude[d] as a matter of law that [ ] Gatling acted as a Government agent while engaging in, tape recording and reporting . . . the telephone calls," J.A. 181, and implied that, as a result, the tape would have been suppressed under Massiah v. United States, 377 U.S. 201 (1964). Ultimately, however, the district court disposed of this claim on the grounds that, under the terms of the plea agreement, Whisonant had waived the claim that his trial counsel provided ineffective assistance by failing to move for the suppression of the tape under Massiah. Thus, the district court did not rule on the merits of the ineffective assistance claim. With respect to the claims arising from the Government's alleged breach of the plea agreement, the district

5

court rejected them based on the conclusion that the sentencing court was not bound by the terms of the plea agreement.

II.

We first address whether Whisonant has waived the right to appeal the issues he now wishes to present. Whisonant submits that the district court mistakenly concluded that he waived his ineffective assistance claim under the terms of the plea agreement because the waiver provision is ambiguous, being subject to more than one interpretation. Therefore, Whisonant argues that the plea agreement should be construed against the Government. See United States v. Harvey, 791 F.2d 294, 303 (4th Cir. 1986). Whisonant suggests that the written terms of the plea agreement simply do not make clear whether Whisonant's ineffective assistance claim was barred by his knowledge of the factual basis for such a claim, or whether Whisonant was barred only if he was actually aware of the legal basis for such a claim at the time he entered into the plea agreement.

The Government concedes that the provision is ambiguous and agrees with Whisonant that he should be permitted to raise his ineffective assistance of counsel claim. We agree also. Because the waiver provision is indeed ambiguous, we interpret the plea agreement to have preserved Whisonant's ineffective assistance of counsel claims under § 2255.

III.

Having concluded that Whisonant did not waive his ineffective assistance claims, we must next determine whether we can resolve these claims on the merits in the first instance or whether we should remand them for the district court to do so. With respect to his first claim--that counsel unreasonably failed to object to the taped telephone conversation--Whisonant contends that, at the very least, he is entitled to a hearing on his ineffective assistance claim. We agree.

A district court must permit a hearing on a § 2255 claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255; see Fon-

6

taine v. United States, 411 U.S. 213, 215 (1973) (remanding § 2255 petition for evidentiary hearing because the record did not permit the Court to "conclude with the assurance required by the statutory standard . . . that under no circumstances could the petitioner establish facts warranting relief under § 2255"). Thus, "[w]hen a colorable Sixth Amendment claim is presented, and where material facts are in dispute involving inconsistencies beyond the record, a hearing is necessary." United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992).

By contrast, the Government contends that the record clearly demonstrates that Whisonant's claim lacks merit. Although the district court did not reach the merits of Whisonant's ineffective assistance of counsel claim, and despite the district court's observation that "[t]he Government has not suggested any grounds, and the court can perceive of none, upon which a motion to suppress the tape recording would have been denied," J.A. 181, the Government urges us to affirm the entry of judgment against Whisonant on his § 2255 petition. Indeed, "we may affirm the district court's judgment for any reason supported by the record, even if it is not the basis that the district court used." United States v. Swann, 149 F.3d 271, 277 (4th Cir. 1998).

Thus, the question for us is whether the record conclusively establishes that Whisonant is not entitled to relief. To prevail on a claim for ineffective assistance of counsel, Whisonant must establish the two familiar requirements of Strickland v. Washington, 466 U.S. 668 (1984). First, Whisonant must show that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688. Next, counsel's deficient performance must result in prejudice. See id. at 691-94. In that regard, Whisonant's burden is as follows:

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [Strickland] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

7

A. Deficient Performance

Under Massiah, "[a] criminal defendant's Sixth Amendment right
to counsel is violated when incriminating statements`deliberately
elicited' by the government, made after indictment and outside the
presence of counsel, are admitted against the defendant at trial."
United States v. Love, 134 F.3d 595, 604 (4th Cir. 1998) (quoting
Massiah, 377 U.S. at 206). The Court has explained that this simply
means the Government may not "knowing[ly] exploit[ ] . . . an oppor-
tunity to confront the accused without counsel being present." Maine
v. Moulton, 474 U.S. 159, 176 (1985).

In summarizing the factual predicate for Whisonant's contention
that the tape would have been excluded under Massiah, the district
court pointed out that Whisonant had already retained counsel at the
time of his telephone conversation with Gatling; that Gatling had
begun providing information about Whisonant's drug activity approx-
imately two years prior to Whisonant's indictment; and that Gatling
had been granted immunity in exchange for her assistance in investi-
gating Whisonant. The Government, however, contends that a motion
to suppress under Massiah would have failed because Gatling was not
acting as a government agent when she recorded her telephone con-
versations with Whisonant. The Government argues that this is so
because there is nothing in the record suggesting that Gatling was in
contact with government agents between her testimony before the
grand jury and the telephone conversations. The absence of this evi-
dence, the Government contends, shows that Gatling acted entirely of
her own initiative in recording Whisonant's calls and acquiring the
equipment to do so.

On the other hand, there is nothing in the record suggesting that
Gatling broke her contact with the Government or stopped assisting
in the investigation of Whisonant. The record does not contain Gat-
ling's written immunity agreement nor does it contain detailed testi-
mony about the terms of Gatling's grant of immunity. Such immunity
agreements frequently contain as a condition of immunity a require-
ment that the person immunized provide continuing assistance to the
Government. We are not surprised by the lack of information in the
record because it does not appear that Gatling's status as a govern-
ment agent was much in dispute before the district court. Indeed, the

8

district court specifically noted that "the Government does not dispute the factual predicate for the defendant's <u>Massiah</u> claim." J.A. 181. And, a review of the Government's submissions to the district court reveals that the Government made only one fleeting, undeveloped reference to the lack of evidence that Gatling was a government agent. On this record, we think there is at least a colorable claim that the tape should have been suppressed under <u>Massiah</u>.

Our analysis does not end simply at whether there was a tenable <u>Massiah</u> claim. It is not necessarily deficient for trial counsel not to pursue a viable motion. Indeed, there are good tactical reasons for not pursuing every potential evidentiary motion with full force. Whisonant's attorney filed an affidavit indicating that he did not pursue a motion to suppress the tape under <u>Massiah</u> because he believed that such a motion would be unsuccessful for two reasons. First, counsel believed that <u>Massiah</u> would not apply because Whisonant had initiated the conversations with Gatling. Second, counsel believed the content of the conversations--Whisonant was attempting to persuade Gatling to commit perjury--would also cause such a motion to fail. Neither of these reasons, in and of themselves, would render a <u>Massiah</u> motion unsuccessful. <u>See Moulton</u>, 474 U.S. at 174 ("[T]he identity of the party who instigated the meeting at which the Government obtained incriminating statements was not decisive or even important to our decision[ ] in <u>Massiah</u>); <u>id.</u> at 164-66 (defendant discussed the creation of false alibis as a defense). In sum, it is not clear to us from the record why counsel would not have pursued a motion to suppress.

B. <u>Prejudice</u>

Assuming that his attorney performed deficiently in failing to move to suppress the tape, Whisonant must still demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hooper</u>, 845 F.2d at 475 (internal quotation marks omitted).

Whisonant presented an affidavit to the district court in which he offered his version for why he changed his plea to guilty:

> My decision to enter a plea of guilty under the terms of the Government's written plea offer was the direct result of

9

> the apparent impact on the jury of their hearing of the tape recording made by Yvette Gatling of telephone conversations I had with her which was admitted in evidence . . . at my trial. I would not have withdrawn my plea of not guilty and entered a plea of guilty if that tape recording had been suppressed under an objection or motion filed by my trial counsel and had not been heard by the jury.

J.A. 170. Indeed, Whisonant announced his decision to change his plea immediately after Gatling concluded her testimony.

Whisonant's counsel, however, indicated in his affidavit that the apparent effect of the tape on the jury was not the only reason that Whisonant changed his plea. According to counsel, during trial the Government revealed that one of Whisonant's girlfriends had become available as a witness for the prosecution. Because she held extremely incriminating information about Whisonant, counsel recounted that her "availability for testimony, and her presence in Wilmington, was a large factor in making the decision to plead guilty." J.A. 150. Also, counsel viewed Gatling's testimony as "directly relevant and revealing based upon her personal involvement with Mr. Whisonant" and evaluated her to be "an effective communicator and a believable witness." J.A. 151. Moreover, counsel believed that the trial had generally not gone well and that "[i]t was obvious by the end of Ms. Gatling's direct examination that Mr. Whisonant was going to be convicted." J.A. 151. According to Whisonant's attorney, all of these factors, in addition to the possibility that Whisonant might receive a reduced sentence for acceptance of responsibility, played a part in convincing Whisonant to change his plea to guilty.

Because the record on this issue consists essentially of directly contradictory affidavits, we believe that it is appropriate to remand the matter for the district court to consider it in the first instance after an evidentiary hearing. Indeed, the record here does not "conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255. Whether Whisonant can establish prejudice will depend, to a large extent, on a credibility determination by the district court. At this juncture, it is not appropriate for us to sort matters out solely on the basis of the cold record.

10

IV.

Whisonant also asserts two claims related to his sentencing. First, Whisonant contends that his attorney provided ineffective assistance because he did not object to the recommendation in the PSR that Whisonant receive only a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 instead of the three-level adjustment contemplated by the plea agreement. We find this claim to be without merit. A review of the record makes clear that counsel's decision not to pursue the three-level adjustment was well within the wide range of professional competence. Indeed, under the circumstances, it was probably wise not to highlight this issue for the sentencing court. After all, in finding that the dangerous weapon adjustment was appropriate, the sentencing court necessarily concluded that Whisonant's testimony that he never carried a gun in connection with the offense was a fabrication. Had counsel insisted on the three-level adjustment for acceptance of responsibility, thus highlighting the issue for the court, it is not unlikely that Whisonant would have lost the two-level adjustment for acceptance of responsibility altogether because of his testimony at his sentencing hearing. In fact, it is not unthinkable that the sentencing court, once focused on the issue of Whisonant's acceptance of responsibility, which requires that he truthfully recount the details of his offense and"any additional relevant conduct," U.S.S.G. § 3E1.1 application note 1(a), might have tacked on an obstruction of justice adjustment for perjurious testimony at the sentencing hearing, see U.S.S.G.§ 3C1.1. Accordingly, we conclude that counsel's not emphasizing the acceptance of responsibility issue was a completely reasonable tactical decision and cannot support a claim for ineffective assistance.

Next, Whisonant contends that he is entitled to relief because the Government breached the plea agreement. Specifically, Whisonant argues that the Government failed to make good on its promise that it would alert the sentencing court that Whisonant was entitled to a three-level, rather than a two-level, downward departure for acceptance of responsibility. Whisonant also contends that the Government breached the plea agreement because it required the Government to "make known to the Court at sentencing the full extent of the Defendant's cooperation." J.A. 51. Whisonant was debriefed by investigat-

11

ing authorities prior to sentencing, but the Government did not bring this fact to the attention of the sentencing court.

We believe that Whisonant reads into the plea agreement an affirmative duty on the part of the Government that is not there with respect to the three-level acceptance of responsibility adjustment. The plea agreement provides simply that the Government is bound to the position that such an adjustment is appropriate. There is nothing in the agreement that requires the Government to recommend or move for a three-level downward adjustment for acceptance of responsibility. And, Whisonant does not suggest that the Government took a position contrary to its agreement that a three-level reduction was appropriate.

To the extent that the plea agreement created an affirmative duty on the part of the Government to reveal favorable information to the court at the sentencing hearing, the Government's failure to do so, at least in these circumstances, does not provide Whisonant with a basis for relief. Under the plea agreement, the Government agreed "[t]hat it [would] make known to the Court at sentencing the full extent of the Defendant's cooperation." J.A. 51. Whisonant argues that prior to the sentencing hearing, he had cooperated in a debriefing with federal agents. At sentencing, however, the Government did not bring this to the attention of the court. Its failure to do so, claims Whisonant, reduced his chances of securing a three-level reduction under U.S.S.G. § 3E1.1(b)(1) instead of the two-level reduction awarded by the sentencing court. But, even if we suppose that the Government breached the plea agreement by failing to suggest to the sentencing court that Whisonant's cooperation in the debriefing entitled him to consideration for a three-level acceptance of responsibility adjustment, we perceive no prejudice for the same reasons that we reject Whisonant's ineffective assistance claim--had the court been asked to reconsider the PSR's recommendation on this issue, Whisonant would likely have lost his acceptance of responsibility adjustment entirely because of his testimony at the sentencing hearing. Indeed, because the sentencing court essentially concluded that Whisonant lied during his sentencing testimony about his firearms, Whisonant probably does not even qualify for the two-level adjustment that he received. See U.S.S.G. § 3E1.1, application note 1(a) (requiring that the recipient of an acceptance of responsibility adjustment "truthfully admit[ ] the conduct comprising the offense(s) of conviction, and

12

truthfully admit[ ] . . . any additional relevant conduct"). If anything, the Government's failure to bring this issue to the sentencing court's attention worked to Whisonant's benefit.

Finally, we note that because the sentencing court imposed a term of imprisonment at the bottom of Whisonant's sentencing range, the Government's alleged breach of the plea agreement could not have prejudiced Whisonant (assuming, as we explained previously, that Whisonant was not entitled to a downward adjustment for acceptance of responsibility because of his testimony at sentencing). Even if the Government had commented at sentencing on Whisonant's ostensible cooperation, the court could not have fixed a lesser sentence. Since Whisonant is not claiming that his post-plea cooperation made him eligible for a downward departure for substantial assistance, see U.S.S.G. § 5K1.1, we fail to see how Whisonant suffered any prejudice.

V.

For the foregoing reasons, we grant Whisonant's application for a certificate of appealability with respect to Whisonant's claim that trial counsel provided ineffective assistance by not moving to suppress the taped telephone conversation between Whisonant and Gatling, vacate that portion of the district court's judgment, and remand that claim for further consideration by the district court. We deny Whisonant's application for a certificate of appealability and dismiss his § 2255 petition with respect to his remaining claims.

DISMISSED IN PART, VACATED IN PART, AND REMANDED

13